**IN THE COURT OF APPEALS OF IOWA**

No. 4-036 / 13-1950
Filed February 5, 2014

**IN THE INTEREST OF S.L.,**
**Minor Child,**

**L.M.F., Mother,**
 Appellant.
_____

 Appeal from the Iowa District Court for Linn County, Barbara H. Liesveld,

District Associate Judge.

 A mother appeals the termination of her parental rights.  **AFFIRMED.**

 W. Eric Nelson of State Public Defender Office, Cedar Rapids, for

appellant.

 Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant

Attorney General, Jerry Vander Sanden, County Attorney, and Rebecca Belcher,

Assistant County Attorney, for appellee.

 David N. Nadler, Cedar Rapids, attorney and guardian ad litem for minor

child.

 Considered by Danilson, C.J., and Vaitheswaran and Mullins, JJ.

**MULLINS, J.**

A mother appeals the termination of her parental rights to her five-year-old daughter, S.L.[1] The mother's parental rights were terminated under Iowa Code section 232.116(1)(f) and (i) (2013). She asserts on appeal that the guardian ad litem failed to prove there was clear and convincing evidence the child could not be returned to her custody at the present time, *see* Iowa Code § 232.116(1)(f)(4), and failed to prove there was clear and convincing evidence that the offer or receipt of services would not correct the conditions that led to the abuse or neglect of the child within a reasonable period, *see* Iowa Code § 232.116(1)(i)(3). She also asserts it was not in her daughter's best interests to terminate her parental rights. Upon our de novo review, we conclude the guardian ad litem has proved the child cannot be returned to the custody of the mother at the present time. We also find it is in the child's best interests to terminate the mother's parental rights.

## I. BACKGROUND FACTS AND PROCEEDINGS.

The mother has a history of drug abuse and mental health issues. The child was removed from the mother's home in April 2010 and adjudicated a child in need of assistance the following month, when the child was just under two years of age, due to concerns over the cleanliness of the home, the mother's use of cocaine, and the supervision of the child. The mother's other three children were also removed from the mother's care at that time. The child was placed in the care of her paternal grandmother. A little over a year after the removal, the

---

[1] The court also terminated the parental rights of the child's legal father and biological father; neither father appeals the termination order.

child was placed in her biological father's care. However, the child was removed from his home approximately six months later due to his drug use. The child was again placed in her paternal grandmother's home.

After another year, a trial home placement with the mother began in January 2012. At trial, the paternal grandmother stated that the child stayed with her a significant amount of time during the trial home placement with the mother; specifically, the child stayed with the paternal grandmother eighteen of thirty-one overnights in March, fifteen of thirty overnights in April, and fourteen of thirty-one overnights in May. Approximately five months after the trial home placement with the mother began, the mother admitted to using methamphetamine while caring for the child and using crack cocaine outside the presence of the child. The mother also later admitted to using marijuana during the trial home placement outside the presence of the child and was seen intoxicated while the child was in her care. The mother also permitted the child's biological father to have unsupervised contact with the child in contravention to the direction of the department of human services. The child was once again removed from the mother's care[2] and placed with the paternal grandmother, where she remained at the time of the termination hearing.

The mother has a long history of mental health problems, including diagnoses of PTSD, anxiety, depression, and ADHD. She has been receiving weekly individual therapy for three years. Her therapist testified at the termination hearing that there has been a lot of chaos in the mother's life and that

---

[2] The older three children were also removed from the mother's care at this time and placed in the care of their respective paternal grandparents.

there has not been one person that can be said to have had a positive relationship with the mother. Every person around her, including her former romantic relationships and her immediate family members, has had a very "push and pull toxic relationship" with the mother. The therapist did say the mother has made huge progress but that progress is just the tip of the iceberg.

The trial court terminated the mother's parental rights after finding the child had been removed from her parents' care for over half of her life due to the parents' drug use and mental health problems. While the mother had made progress in therapy over the past three years, she still had a long way to go, and she had little to no insight and judgment into her choice of relationship with men. She also maintained a relationship with her own father, which placed her at substantial risk of abuse and exposing her children to abuse if they are in her care.

The court went on to conclude it was in the child's best interests to terminate the mother's rights as the child should not have to wait any longer for her parents to demonstrate they can become responsible parents. The court did not dispute the child had a bond with her mother and her siblings; however, given the fact the paternal grandmother was willing to adopt the child and would continue to allow appropriate contact, the court found the bond did not preclude termination. The court also noted that the child has lived with her paternal grandmother off and on for at least half of her life.

**II. SCOPE AND STANDARD OF REVIEW.**

We conduct a de novo review of termination of parental rights proceedings. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). Although we are not bound by the juvenile court's findings of fact, we do give them weight, especially in assessing the credibility of witnesses. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). An order terminating parental rights will be upheld if there is clear and convincing evidence of the grounds for termination under section 232.116. *Id.* "Evidence is considered 'clear and convincing' when there are no serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *Id.* (citations omitted).

**III. CLEAR AND CONVINCING EVIDENCE.**

The mother challenges the guardian ad litem's proof to support the termination of her rights under section 232.116(1)(f) and 232.116(1)(i). Specifically, she claims there was no evidence the child could not have been returned to her care and there was no evidence the offer or receipt of services would not correct the conditions that led to the abuse or neglect of the child within a reasonable period. "We only need to find grounds to terminate parental rights under one of the sections cited by the district court in order to affirm its ruling." *In re R.K.*, 649 N.W.2d 18, 19 (Iowa Ct. App. 2000). We conclude there is clear and convincing evidence that the child could not be returned to the mother's custody at the present time.

The mother notes she had made progress in her therapy and had recently experienced an "epiphany" as to the persons and events that trigger her

substance abuse. She had taken steps to remove these bad influences from her life. However, the mother had recently experienced a relapse a little over two months before the first day of the termination hearing. She admitted using methamphetamine while caring for the child during the trial home placement and cocaine while with her father and uncle. She admitted using marijuana during that time period, and she was also seen to be intoxicated while caring for the child. While we applaud her recent progress in therapy and the steps she is making to remove all of the bad influences in her life, which according to her therapist included every interpersonal relationship in her life, this recent progress does not indicate the child could have been returned to her care at the time of the termination hearing. Even the mother admitted at the hearing that she would not be capable of caring for the child the second day of the hearing because she was pretty emotional but maybe could care for her "tomorrow." Based on the long history of substance abuse and mental health problems and the testimony from the therapist that the mother, while making a great deal of progress, had just touched the tip of the iceberg, we conclude the guardian ad litem proved by clear and convincing evidence the child could not be turned to the mother's care at the present time.

## IV. CHILD'S BEST INTERESTS AND CLOSENESS OF THE PARENT-CHILD BOND.

The mother next contends that even if the guardian ad litem proved the grounds for termination in this case, the court should not have terminated her rights because it was not in the child's best interests due to the closeness of her

bond with the child. The mother also points to the closeness of the bond between the child and her half-siblings and the animosity between the adults in the family, which she contends is not conducive to future ongoing contact between the children.

In determining whether termination of a parent's rights is in the child's best interests, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). There is also an exception to termination where "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." *Id.* § 232.116(3)(c).

We can glean insight for a determination of the child's long-range best interests from evidence of the parent's past performance as this is often indicative of the future care the parent is capable of providing. *In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012). The mother's past performance is checkered with instances of drug use while caring for the child. The last relapse came after five months of a trial home placement and was only two months before the termination hearing. The mother describes that she has had an "epiphany" as to the persons and events that trigger her substance abuse, and she claims to have taken steps to remove the bad influences from her life. However, we cannot ask the child to wait in limbo while the mother puts her life back together. *See In re C.K.*, 558 N.W.2d 170, 175 (Iowa 1997). We find it to be in the child's best

interests to have stability and permanency now in the home of her paternal grandmother, with whom she has spent half of her life.

The grandmother also indicated a willingness to allow the child to have appropriate contact with her half-siblings, who at the time of the termination hearing in this case appeared to be living with their respective paternal grandparents. The ongoing sibling contact was supported by the paternal grandparents of the middle two children, who were caring for them during the termination hearing in this case. Based on the evidence in this case, we conclude that the termination would not be detrimental to the child due to the closeness of the bond with the mother, and her bond with her half-siblings can be accommodated in this case due to the willingness of the respective paternal grandparents to allow future ongoing contact.

**AFFIRMED.**